IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INNA VLADI GNIPP, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-3398 |
| | : | |
| PENNSYLVANIA INSURANCE | : | |
| DEPARTMENT COMMISSIONER, | : | |
| *Defendant.* | : | |

## MEMORANDUM

**PAPPERT, J.**                                                  **September 11, 2023**

Inna Vladi Gnipp filed a *pro se* employment discrimination Complaint against her former employer, the Pennsylvania Insurance Department.  Gnipp also filed a Motion to Proceed *In Forma Pauperis*.  For the following reasons, the Court grants Gnipp leave to proceed *in forma pauperis* and dismisses her Complaint.  Gnipp will be allowed to file an amended complaint.

I[1]

Gnipp used the Court's form complaint for alleging employment discrimination. By checking the appropriate location on the form, Gnipp indicates that she is bringing claims for employment discrimination based on national origin (Ukrainian) pursuant to Title VII of the Civil Rights Act, which prohibits employment discrimination based on race, color, gender, religion, and national origin.  (Compl. at 1, 5.)  The gist of Gnipp's claims is that her employer failed to promote her, subjected her to a hostile work

---

[1] The following allegations are taken from the Complaint and documents attached to the Complaint.

environment, and retaliated against her, causing her to stop reporting to work, which ultimately resulted in the termination of her employment.  (*Id.* at 5-8.)

Gnipp began working for the PID in 2016.  (*Id.* at 5.)  She claims that her then supervisor, Tracy Bixler, asked Gnipp whether she would be willing to "take on more complicated filings in order to be considered for promotions earlier."  (*Id.*)  While Gnipp "enthusiastically agreed," she was neither promoted at an earlier time, or in accordance with the expected schedule.  (*Id.*)  Gnipp alleges that her supervisor "claimed not to remember the conversation regarding the possible promotion at all," but Gnipp was nevertheless given an increased workload.  (*Id.* at 6.)  Gnipp was told during an annual evaluation that she was "doing great, but it would be nice if [she] improved a bit more." (*Id.*)  Gnipp contends that this cycle continued for four years.

In 2020, Gnipp "was given a satisfactory job performance with a usual comment that it would be nice" if she improved, and again was not promoted.  (*Id.*)  Gnipp questioned why she had not been promoted and was told that "it was the upper management's decision."  (*Id.*)  Gnipp sent an email to "the then chief of staff, Michael Humphres" seeking an explanation, but did not receive a response.  (*Id.*)  Gnipp also participated in a teleconference with the Deputy Insurance Commissioner Shannen Logue, and Gnipp's supervisor, Ms. Bixler, who listened to Gnipp, but did not provide Gnipp with a further response.  (*Id.*)

At some point, Ms. Bixler retired and was replaced in her supervisory role by Lars Thorne, with whom Gnipp worked for five years and "knew . . . very well."  (*Id.*) During their initial virtual meeting, Gnipp alleges that Thorne "casually chatted with me about matters not related to work, which was completely inappropriate, but highly

characteristic of him so [she] politely listened." (*Id.*) She claims that he also asked about her workflow, to which Gnipp "attempted to direct his mindless chatter to the specific filings;" however, Thorne abruptly ended the call in response. (*Id.*)

The following day, Thorne emailed Gnipp, copying the Bureau Director, Tracie Gray, and allegedly misrepresented the nature of the prior conversation by "bogusly stating that he . . . verbally warned me of the fact that my production appeared to be low." (*Id.*) During an exchange of email messages on December 16, 2021, Gnipp "asked for some guidance on the new management's philosophy: whether we were now prioritizing speedy production over the qualitative reviews in order to protect consumer's rights." (*Id.*) In response, Gnipp was "lectured on the tone" of her email and "threatened with repercussions if it persisted." (*Id.*) Gnipp considered such language to be a reprimand, and "mentioned that [she was] part of a labor union, which should be included in any verbal and/or written reprimanding communications." (*Id.*) Gnipp claims that "instead of including the labor union in on the conversation, [her] supervisor had the department's legal representative, Mr. Harker, contact [her] in the same manner as [her] supervisor had." (*Id.*) Gnipp contacted her union representative, who advised her not to pursue the matter. (*Id.*) Gnipp contends that she would not have questioned the "new management's philosophy" if she had known that it would lead management to attempt to correct her behavior. (*Id.* at 6-7.) She claims that she was encouraged by previous management to freely express any and all concerns related to work. (*Id.*) Gnipp alleges that she then was "repeatedly harassed" by Thorne. (*Id.*)

Gnipp claims she was trained to print documents as part of her work process, and that when the Department switched to teleworking, she purchased a printer at her

own expense to continue that process.  (*Id.*)  She alleges that shortly thereafter,

employees were advised that the use of personal printers was a security risk and were

encouraged to request a Department-issued printer.  (*Id.*)  Gnipp says her request for a

printer was approved by the IT department in Fall 2020, but she did not receive one

despite her repeated requests through Spring 2021.  (*Id.*)  She contends that her "new

supervisor . . . questioned the need for a printer and . . . ignored [her] requests to get

one."  (*Id.*)  Gnipp informed Thorne that the failure to give her a printer "felt

discriminatory."  (*Id.*)  Gnipp claims that Thorne "replied that I should file a complaint

with the EEOC which I did on March 2, 2021 and only then a printer was finally issued

to me."  (*Id.*)

According to Gnipp, by that time her work environment had become "openly

hostile" and she was issued a "Memorandum of Instruction" on March 8, 2021, which

again "lectured [Gnipp] on the tone of [her] emails and threatened [her] with the

termination of employment."  (*Id.*)  Gnipp asserts that the Memorandum of Instruction

was issued in retaliation for the filing of the EEOC complaint.  (*Id.*)  She further

contends that a "previously friendly coworker, Wayne Fresco, . . . questioned my ability

to read and comprehend a written email and . . . ignored my request for an apology."

(*Id.*)  Gnipp filed a complaint with the Pennsylvania Human Relations Commission

("PHRC") in May 2021, alleging retaliation.  (*Id.*)  She received a "written reprimand"

on June 10, 2021; Gnipp asserts that this was a further act of retaliation, as she had

never been reprimanded "prior to the onset of the conflict with the new management."

(*Id.*)

Gnipp was instructed by the PHRC representative, Valerie Parris, that if her work environment became hostile, she "was not under any obligation to continue working pending the result of the PHRC's investigation." (*Id.*)  Because she "believed the management's claims that [she] was a valuable member of the team," Gnipp continued to work.  (*Id.*)  "[R]ight about that time period," Gnipp's department "was going through the process of signing a new contract with the labor union." (*Id.*)  Gnipp contends that "everybody but me" was approved to sign it and continue teleworking. (*Id.*)  Gnipp was not permitted to do so because she had been reprimanded.  (*Id.*)  Gnipp avers that "teleworking mode" was a benefit and its withdrawal required union involvement.  (*Id.* at 7-8.)  Gnipp requested that her labor union representative be included in a teleconference with her supervisor, Thorne, to discuss the matter.  (*Id.* at 8.)

Gnipp's request was "bluntly denied" and she was directed to report physically to the office in early August 2021, and did so.  (*Id.*)  Gnipp alleges that no one else was physically present in the office when she reported, in violation of "the law" which prohibited anyone from working on premises without supervision.  (*Id.*)  Consequently, Gnipp notified Thorne, Bureau Director Gray, Deputy Insurance Commissioner Shannen Logue, and Chief of Staff Michael Humphryes of this latest "violation."  (*Id.*)  Gnipp received a response only from Thorne who reiterated that she was prohibited from teleworking.  (*Id.*)  Gnipp further alleges that she "felt that [she] had no other choice but to declare a strike in order to invoke [her] right to be represented by a labor union, to work in a safe environment (with COVID still raging)[,] with proper supervision and to be treated equally as other members of the "team" were treated."

(*Id.*)  She sent an email "to that effect" on August 3, 2021, to then Pennsylvania

Insurance Department Commissioner Jessica Altman, but did not receive a response.

(*Id.*)

Gnipp's employment with Defendant PID was terminated on August 24, 2021,

due to her failure to report to work.  (*Id.*)  Gnipp claims that this decision "bluntly

ignore[ed] the fact that an active investigation by the PHRC was still pending and [she]

was instructed that [she] was under no obligation to do so if the work environment was

hostile by PHRC's representative, Valerie Parris."  (*Id.*)  She contends that PID also

"ignored" the pending PHRC investigation when it filed theft charges against Gnipp for

the failure to return office equipment.  (*Id.*)  Gnipp avers that she had a reasonable

expectation that the PHRC investigation would be favorable to her and that she would

return to work upon its completion.  (*Id.*)

Gnipp filed a charge of discrimination with the EEOC on March 2, 2021.  (*Id.* at

7.)  She also filed a complaint with the Pennsylvania Human Rights Commission,

although it is unclear when that occurred.  She alleges she filed it in May 2021, but also

says it was filed on June 10, 2021.  (*See id.* at 3, 7.)  The EEOC issued a notice of right

to sue letter on May 26, 2023.  (*Id.* at 9.)  Gnipp then filed this lawsuit seeking, among

other things, damages and severance pay.  (*Id.* at 5.)

## II

The Court grants Gnipp leave to proceed *in forma pauperis* because it appears

that she cannot afford to pay the fees to commence this civil action.  Accordingly, 28

U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if

it fails to state a claim.  Whether a complaint fails to state a claim under §

6

1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* "[T]he plausibility paradigm announced in [*Bell Atl. Corp. v.*] *Twombly*[, 550 U.S. 544 (2007),] applies with equal force to analyzing the adequacy of claims of employment discrimination." *Fowler v. UMPC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quotations omitted).

As Gnipp is proceeding *pro se*, the Court construes her allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). This requires the Court to remain flexible, especially considering a litigant's *pro se* status. *Id.* The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant also "'cannot flout procedural rules -they must abide by the same rules that apply to all other litigants.'" *Id.*

### III

Federal law "proscribe[s] discrimination in employment based on several personal characteristics" including race, color, religion, sex, national origin, age, and disability. *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448-49 (3d Cir. 2015) (citing, *inter alia*, 42 U.S.C. § 2000e-2(a), 29 U.S.C. § 623, § 42 U.S.C. 12112). In general, to state a

claim of employment discrimination, a plaintiff must plead facts showing that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In particular, a plaintiff must allege sufficient facts to raise a reasonable expectation that discovery will reveal evidence that her membership in a protected class was "either a motivating or determinative factor" in her employer's adverse employment action against her. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016); *see also Santos v. Iron Mountain Film & Sound*, 593 F. App'x 117, 119 (3d Cir. 2014) (*per curiam*) (explaining that to survive a motion to dismiss a plaintiff "cannot merely state that he was discharged due to his national origin" and instead "must plead facts that plausibly connect his national origin to his discharge").[2]

To plead a hostile work environment claim, a plaintiff must allege: (1) she suffered intentional discrimination because of membership in a protected class; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present. *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 428 (3d Cir. 2020) (alterations, internal quotations, and citations omitted); *Felder v. Penn Mfg. Indus., Inc.*, 303 F.R.D. 241, 243 (E.D. Pa.

---

[2] A complaint need not establish a *prima facie case* to survive a motion to dismiss, because a *prima facie case* is an evidentiary standard, not a pleading requirement, and hence is not a proper measure of whether a complaint fails to state a claim. *Connelly*, 809 F.3d 788-89 (internal citations and quotations omitted). Nonetheless, a plaintiff must "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Fowler*, 578 F.3d at 213.

2014).  However, "Title VII imposes no general civility code" as it "does not reach the ordinary tribulations of the workplace, for example, sporadic use of abusive language or generally boorish conduct."  *Vance v. Ball State Univ.*, 570 U.S. 421, 452 (2013) (internal quotations omitted).

Federal law also prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes, or because she made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing under the employment discrimination statutes.  *See* 42 U.S.C. § 2000e-3; *Allstate*, 778 F.3d at 449.  A plaintiff states a retaliation claim if she "pleads sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the following elements: (1) she engaged in conduct protected by Title VII; (2) the employer took adverse action against her; and (3) a causal link exists between her protected conduct and the employer's adverse action."  *Connelly*, 809 F.3d at 789; *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017).  A general complaint about unfair treatment does not constitute protected activity; a plaintiff must show that she complained specifically about unlawful discrimination.  *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).

While the Complaint alleges perceived mistreatment, Gnipp fails to allege a plausible claim for employment discrimination.  Even liberally construed, Gnipp fails to state how her membership in a protected class was "either a motivating or determinative factor" in her employer's adverse employment action against her. Moreover, Gnipp claims that she was harassed, but none of the facts alleged in the Complaint reflect that this treatment was motivated by Gnipp's national origin.  Nor do

the facts alleged in the Complaint support a plausible inference that Gnipp engaged in a protected activity for purposes of a retaliation claim.  Although Gnipp alleges that she complained to her superiors, and filed an EEOC complaint as well as a complaint with the PHRC, Gnipp does not allege the basis for such complaints, *i.e.*, that she complained about unlawful discrimination because of her national origin.  In the absence of such facts, Gnipp has not plausibly alleged claims for employment discrimination, hostile work environment, or retaliation.  *See, e.g.*, *Favors v. Sec'y United States Dep't of Veterans Affs.*, 695 F. App'x 42, 44 (3d Cir. 2017) (*per curiam*) (affirming dismissal of Title VII race discrimination claim where plaintiff "included no allegations whatsoever linking his termination to his race"); *Santos*, 593 F. App'x at 119 (affirming dismissal of national origin discrimination claim where plaintiff had "submitted nothing but the naked assertion that he was discharged because he is Honduran"); *Wiggins v. Universal Prot. Servs. LLC*, No. 22-1491, 2022 WL 4116912, at *3 (3d Cir. Sept. 9, 2022) (*per curiam*) ("Wiggins did not state a prima facie case for a hostile work environment claim, as he did not make factual allegations that could suggest that his workplace was "permeated with *discriminatory* intimidation, ridicule, and insult . . . that [was] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment." (emphasis and alterations in original)); *Wiggins*, 2022 WL 4116912, at *3 (finding that plaintiff who failed to mention concerns regarding sex-based discrimination in complaints to management, and which complaints contained no indication that he intended to highlight a discriminatory employment practice, did not allege that he engaged in protected activity for purposes of a Title VII retaliation claim).

IV

The Court grants Gnipp leave to proceed *in forma pauperis* and dismisses her Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Gnipp may file an amended complaint in the event she can allege additional facts to state plausible claims.  Gnipp's motion for appointment of counsel is denied without prejudice as premature.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).  An Order follows, which provides further guidance regarding amendment.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**